**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**CARRIE MARIE YOUNG,**<br><br>***Defendant.*** | **CRIMINAL NO.**<br><br>**VIOLATIONS:**<br><br>**18 U.S.C. § 371**<br>**Conspiracy to Commit Wire Fraud**<br>**(Count 1)** |

# INFORMATION

The United States of America, by and through the United States Department of Justice, Criminal Division, charges that, at all times material to this Information, on or about the dates stated below:

1. Beginning no later than in or around May 2022 and continuing until at least in or around September 2025, Defendant Carrie Marie Young ("DEFENDANT" or "YOUNG") conspired and agreed with others, known and unknown (collectively, "CONSPIRATORS") and devised a scheme and artifice to: (a) make untrue statements of material fact, and omit material facts necessary to make the statements made not misleading, about XETA Capital LLC and GAXSYS Holding AG conducting their businesses with transparency, integrity, and honesty that was verified through audits by international auditing firms; (b) make untrue statements of material fact, and omit material facts necessary to make the statements made not misleading, to conceal material information about GAXSYS and its employees, agents, auditors, audits, and law firms from potential investors and victim-investors, who purchased cryptocurrency from XETA Capital and investment services from GAXSYS; (c) make untrue statements of material fact, and omit material facts necessary to make the statements made not misleading, to induce victim-investors to purchase or refrain from selling $XETA Tokens, XONs, Uncharted NFTs, and other forms of

cryptocurrency purchased from XETA Capital (collectively, "XETA Cryptocurrency"); (d) obtain and use victim-investors' money and property for DEFENDANT'S and CONSPIRATORS' personal use and benefit; and (e) conceal the scheme and artifice to defraud from victim-investors, financial institutions, government regulators, and law enforcement.

**Relevant Individuals and Entities**

2. YOUNG was a citizen of the United States and a co-founder of XETA Capital LLC.

3. XETA Capital LLC was organized in the United States in 2022. XETA Capital promoted cryptocurrency investment projects through the website https://www.xetacapital.com and other websites and online forums.

4. GAXSYS Holding AG was held out as company name of a purported investment firm. GAXSYS was falsely and fraudulently held out as registered self-regulatory organization in Switzerland and was promoted through the website https://gaxsysholding.ch/ and other online forums.

5. Law Firm B was held out as a law firm in the United Kingdom that represented GAXSYS.

6. Accounting Firm C was held out as an accounting firm in the United Kingdom that audited the financial statements of XETA Capital and GAXSYS.

7. Co-Conspirator 1 resided in the United Kingdom and operated and directed GAXSYS.

8. Co-Conspirator 2 resided in the United Kingdom, co-founded XETA Capital, and promoted GAXSYS.

9. Co-Conspirator 3 resided in the United Kingdom, co-founded XETA Capital, and held himself out as a fund manager for GAXSYS.

10. Co-Conspirator 4 resided in the United States in the state of Texas and co-founded XETA Capital.

11. Co-Conspirator 5 resided in the United States in the state of California and co-founded XETA Capital.

12. Co-Conspirator 6 resided in the United States in the state of Missouri and co-founded XETA Capital.

**Relevant Terms**

13. A "cryptocurrency" was a form of digital asset in which transactions were verified and records were maintained by a decentralized computer network using cryptography, rather than a centralized authority such as a bank or government.

14. A blockchain was a digital ledger that was distributed and maintained across a decentralized network of computers. Each blockchain recorded transactions for one or more types of cryptocurrency. Each blockchain was accessible to the public on the internet, including to individuals within the District of Columbia.

15. A "cryptocurrency token" was a type of cryptocurrency that gave its holder access to a specific product, service, feature, investment interest, or function within a blockchain-based platform.

16. A "$XETA Token" was a type of cryptocurrency token that XETA Capital promoted and sold to the public in exchange for access to GAXSYS's purported security investment programs.

17. A "XON" was a type of cryptocurrency token that the public could obtain from XETA Capital in exchange for ten (10) $XETA Tokens.

18. A "Non-Fungible Token" or an "NFT" was a unique digital token recorded on a blockchain that was used to verify the authenticity and ownership of a specific digital or physical asset.

19. An "Uncharted NFT" was an NFT that XETA Capital promoted and sold to the public in exchange for access to high-yield securities investment programs through the website https://theuncharted.space and other online forums.

20. "Discord" was an online communication platform that enabled participants to communicate through text messages, voice calls, video calls, screen sharing, and community discussion spaces.

**Conspiracy to Commit Wire Fraud**
**(18 U.S.C. § 371)**

21. Paragraphs 1 through 20 of this Information are realleged and incorporated by reference as though fully set forth herein.

22. Beginning no later than in or around May 2022, and continuing until at least in or around September 2025, in the District of Columbia, and elsewhere, the DEFENDANT,

**CARRIE MARIE YOUNG**,

did knowingly and intentionally, that is, with the intent to advance the conspiracy, combine, conspire, and agree with other individuals, known and unknown, to commit certain offenses against the United States, namely: wire fraud, that is, to knowingly, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire communications in interstate and foreign

commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

Purpose

23. The purpose of the conspiracy and scheme to defraud was for YOUNG and CONSPIRATORS to: (a) fraudulently induce victim-investors to purchase or refrain from selling XETA Cryptocurrency purchased from XETA Capital; (b) fraudulently induce victim-investors to pay fees and other costs to maintain access to the purported benefits that XETA Capital and GAXSYS offered to investors; (c) use victim-investors' money and property for YOUNG's and CONSPIRATORS' benefit; and (d) conceal the conspiracy and scheme to defraud from victim-investors, financial institutions, government regulators, and law enforcement.

Manner and Means

24. In furtherance of the conspiracy, and to accomplish its object, YOUNG and CONSPIRATORS used the following methods, manner, and means:

a. Beginning in or around June 2022, CONSPIRATORS promoted XETA Capital and GAXSYS to potential investors through social media and online forums and broadcasts, including through Discord and YouTube, and transmitted by wire in interstate commerce.

b. CONSPIRATORS, directly and indirectly, offered for purchase XETA Cryptocurrency to potential investors, and promised high-yield returns to purchasers of XETA Cryptocurrency and in the form of residual income "rewards," and access to GAXSYS's purported investment services. Investors were required to pay monthly and intermittent fees to XETA Capital to maintain their investment and to claim "rewards."

c. CONSPIRATORS promised high-yield returns on investments available to purchasers of XETA Cryptocurrency.

d. CONSPIRATORS made false, fraudulent, and misleading statements and representations, deceptive half-truths, and material omissions, including omitting and concealing the criminal history of traders for, and control persons of, GAXSYS.

e. YOUNG and CONSPIRATORS drafted fictitious letters purportedly from Law Firm B and others to defraud potential investors and victim-investors concerning the legitimacy and trustworthiness of GAXSYS and XETA Capital.

f. YOUNG and CONSPIRATORS drafted fictitious letters purportedly from Accounting Firm C and others to defraud potential investors and victim-investors concerning the accuracy of financial audits of XETA Capital and GAXSYS.

Overt Acts in Furtherance of the Conspiracy

25. In furtherance of the conspiracy and to accomplish its objects, the following overt acts were committed in the District of Columbia and elsewhere, on or about the following dates:

a. On July 14, 2022, YOUNG, Co-Conspirator 2, Co-Conspirator 4, Co-Conspirator 5, Co-Conspirator 6, and others met in Branson, Missouri, and filmed XETA Capital promotional material that stated that XETA Capital had a business ethos centered around transparency, integrity, and honesty that was verified by financial audits conducted by international auditing firms. At that time, Co-Conspirator 2 knew these statements were false.

b. On August 15, 2022, YOUNG and Co-Conspirator 2 drafted and revised a fictitious letter that purported to come from Law Firm B on behalf of GAXSYS containing false, fraudulent, and misleading statements and representations, deceptive half-

truths, and material omissions that were intended to defraud potential investors and victim-investors of XETA Cryptocurrency.

c. On August 19, 2022, CONSPIRATORS caused to be transmitted to XETA Cryptocurrency victim-investors via Discord, including by wire in interstate commerce, a XETA Capital white paper that contained false, fraudulent, and misleading statements and representations, deceptive half-truths, and material omissions, including that XETA Capital's reputation for transparency, integrity, and honest business dealings would be verified with quarterly financial reports audited by international auditing firms.

d. On January 21, 2023, YOUNG and Co-Conspirator 2 drafted and revised a fictitious audit letter that purported to come from Accounting Firm C on behalf of XETA Capital containing false and misleading statements that were intended to defraud potential investors and victim-investors of XETA Cryptocurrency.

e. On April 8, 2023, Co-Conspirator 4 and Co-Conspirator 5 transmitted and caused to be transmitted by wire in interstate commerce a live-stream video broadcast via Discord discussing and promoting the fictitious January 2023 audit letter that purported to come from Accounting Firm C on behalf of XETA Capital containing false and misleading statements that were intended to defraud potential investors and victim-investors of XETA Cryptocurrency.

f. On August 2, 2024, YOUNG, Co-Conspirator 4, Co-Conspirator 5, and Co-Conspirator 6, sent, and caused to be sent, to the Commodity Futures Trading Commission, within the District of Columbia, copies of the fictitious August 2022 letter that purported to come from Law Firm B on behalf of GAXSYS containing

false and misleading statements intended to defraud potential investors and victim-investors of XETA Cryptocurrency.

g. On September 17, 2024, YOUNG caused to be sent, and Co-Conspirator 4, Co-Conspirator 5, and Co-Conspirator 6, sent and caused to be sent, to the Commodity Futures Trading Commission, within the District of Columbia, copies of the fictitious January 2023 audit letter that purported to come from Accounting Firm C on behalf of XETA Capital containing false and misleading statements intended to defraud potential investors and victim-investors of XETA Cryptocurrency.

(In violation of 18 U.S.C. § 371)

**FORFEITURE ALLEGATION**

1. The allegations contained in Count One are incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. Upon conviction of the offense set forth in this Information, DEFENDANT shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to the violation(s), pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). The property to be forfeited includes, but is not limited to, a forfeiture money judgment.

3. If any of the above-described property, as a result of any act or omission of DEFENDANT:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to

//

Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

(18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c); and 21 U.S.C. § 853(p))

LORINDA I. LARYEA
Chief
White Collar Section
Criminal Division
U.S. Department of Justice

By: ______________________________
THEODORE M. KNELLER
Acting Assistant Deputy Chief
AMANDA F. LINGWOOD
Trial Attorney
White Collar Section
Criminal Division
U.S. Department of Justice